# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * *  \*
PATRICIA PERNAL,                     \*
                                     \*   No. 12-667V
           Petitioner,   \*   Special Master Christian J. Moran
                                     \*
v.                                   \*   Filed: May 12, 2016
                                     \*
SECRETARY OF HEALTH                  \*   Attorneys' fees and costs;
AND HUMAN SERVICES,                  \*   assistance in preparing report;
                                     \*   expert hourly rate
           Respondent.   \*
* * * * * * * * * * * * * * * * * *  \*

<u>Ronald C. Homer & Joseph Pepper,</u> Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner;
<u>Heather L. Pearlman</u>, United States Dep't of Justice, Washington, DC, for respondent.

## **PUBLISHED DECISION ON ATTORNEYS' FEES AND COSTS**[1]

After succeeding in her Vaccine Program claim, Patricia Pernal filed an application for attorneys' fees and costs.  The Secretary opposed this request in part.  Ms. Pernal is awarded **$109,329.96**.

### PROCEDURAL HISTORY

Ms. Pernal alleged that the seasonal influenza ("flu") vaccine caused her to develop polymyositis.  <u>See</u> Am. Petition, filed Apr. 17, 2013.  After filing her case, Ms. Pernal submitted medical records on November 16, 2012 and December 6, 2012, and additional evidence on January 3, 2013.  The Secretary filed her Rule 4

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

report maintaining that Ms. Pernal failed to meet her burden under Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).  Resp't's Rep., filed Feb. 27, 2013.  After settlement discussions proved unsuccessful, the parties requested a timeline for the submission of expert reports.  See Pet'r's Status Rep., filed June 3, 2013.

The undersigned issued an order proposing that any witness's expert report would constitute his (or her) direct testimony at any hearing.  The undersigned also proposed instructions and anticipated that the parties would comment upon the proposed plan at a later status conference.  Order, filed June 5, 2013.  During the ensuing status conference, Ms. Pernal opposed the use of expert reports as direct testimony arguing that it would inhibit the ability to develop the record through oral testimony at a hearing.  However, no specific objections to the topics were made by petitioner.  Respondent also did not pose any specific objections, generally supporting the approach.

The undersigned acknowledged Ms. Pernal's concerns, noting that the order recognized that the attorney's involvement in the preparation of the report would likely be similar to an attorney's involvement in organizing the expert's direct testimony.  The undersigned emphasized that the proposed instructions provided a floor for the amount of information that the experts may present, not a ceiling.  The undersigned informed the parties that the expert reports would constitute direct testimony and ordered that the "Instructions to Witnesses Offering Opinion Testimony" be given to any expert retained.  Order, filed June 24, 2013.

Ms. Pernal continued to challenge the procedure for expert witnesses, but these challenges were generally unpersuasive.[2]  After the disputes about the procedure were overcome, Ms. Pernal filed the expert report and supporting medical literature of Samar Gupta on November 1, 2013. Exhibit 23.  Dr. Gupta's first report is six pages and cites 15 articles.  Id.  Dr. Gupta billed a total of 23 hours for his initial case review and writing this report.  Pet'r's Appl'n, filed Nov. 9, 2015, tab B at 15-17.  Ms. Pernal's attorney, Joseph Pepper, spent approximately 40 hours, over four and a half months, assisting Dr. Gupta in writing this report.  Id., tab A, at pdf 20-32.  After reviewing Dr. Gupta's report, the undersigned ordered a supplemental report from Dr. Gupta to address fully the topics required in the expert instructions.  Order, filed Nov. 5, 2013.

---

[2] See Pet'r's Mot. to Vacate Order, filed July 2, 2013, and Pet'r's Renewed Motion to Vacate Order, filed Nov. 1, 2013.

2

Ms. Pernal filed a supplemental report from Dr. Gupta on December 19, 2013.  Exhibit 25.  The six page report was in question-and-answer format addressing the questions posed by the undersigned in the June 24, 2013 order.  See id.  Dr. Gupta billed a total of four hours for the preparation of this report.  Pet'r's Appl'n, tab B, at 19.  Mr. Pepper heightened his involvement in the preparation of the supplemental report and met with Dr. Gupta.  Mr. Pepper's work took place from November 20, 2013 to December 10, 2013, with a meeting taking place on December 10.  Approximately 22 hours, over 20 days, were billed by Mr. Pepper in preparation for this meeting.  Pet'r's Appl'n, tab A, at pdf 33-36.

The Secretary filed the expert report of Chester Oddis on March 7, 2014.  Exhibit A.  After reviewing Dr. Oddis's report, the undersigned ordered a supplemental report from Dr. Oddis to address fully the topics required in the expert instructions.  Order, filed March 25, 2014.  The Secretary filed the supplemental report of Dr. Oddis addressing the questions posed by the undersigned on April 21, 2014.  Exhibit H.

Ms. Pernal filed a second supplemental report from Dr. Gupta to address Dr. Oddis's expert report on June 24, 2014.  Exhibit 26.  This responsive report, for which Dr. Gupta billed a total of 26 more hours, was seven substantive pages with a two-page timeline prepared largely by the law firm (see Pet'r's Appl'n, tab A, at pdf 41-42), and included eight references.  The experts disagreed on the accuracy of Ms. Pernal's polymyositis diagnosis, petitioner's theory of molecular mimicry, onset, and the logical sequence of cause and effect.

The Secretary filed a responsive report from Dr. Oddis on August 6, 2014.  Exhibit K.  Disagreement continued over the accuracy of Ms. Pernal's polymyositis diagnosis and whether a logical sequence of cause and effect existed.  Ms. Pernal filed another responsive report on October 2, 2014, addressing Dr. Oddis's latest report.  Exhibit 31.  A total of 10 more hours was billed by Dr. Gupta to produce a four-page, point-by-point response to Dr. Oddis.  Pet'r's Appl'n, tab B, at 23.

During an October 31, 2014 status conference, the parties indicated that there was no progress on settlement and a schedule for pretrial briefs was set forth.  A one-day hearing was scheduled for March 13, 2015, in Boston, MA.  Ms. Pernal filed her pre-hearing brief on January 30, 2015, followed by the Secretary's pre-hearing brief two weeks later.

On March 10, 2015, the parties informed the court that a tentative agreement in the case had been reached. The undersigned issued a decision awarding compensation to petitioner based on the parties' stipulation. 2015 WL 2401168 (Fed. Cl. Spec. Mstr. Apr. 17, 2015). With the merits of Ms. Pernal's case resolved, the parties turned to the issue of attorneys' fees and costs.

Ms. Pernal filed her application for attorneys' fees and costs on July 27, 2015. She requested $83,425.20 in attorneys' fees and $38,898.84 in attorneys' costs for a total of $122,674.04. In compliance with General Order No. 9, Ms. Pernal filed a statement indicating that she incurred out-of-pocket costs totaling $350.00 in pursuit of this claim. A total of seven attorneys, as well as law clerks and paralegals, billed for work done on Ms. Pernal's case. Dr. Samar Gupta billed $35,520, accounting for more than 90 percent of the costs.

The Secretary filed a Motion to Suspend Proceedings, stating that because counsel for Ms. Pernal has a pending fee application with similar issues to be addressed before the undersigned, the current application should be decided after that case "in the interest of judicial economy." Resp't's Mot. to Susp. Proc., filed July 30, 2015, at 2. The Secretary then filed a formal opposition to Ms. Pernal's application for attorneys' fees and costs with objections to rate, amount, and costs. Resp't's Opp'n, filed Aug. 11, 2015.

Ms. Pernal filed a 58-page response to the Secretary's opposition, arguing that the requested rate and amount by the attorneys are reasonable, the rate for Dr. Gupta is reasonable based on his qualifications, and the fees and costs associated with the "December 10, 2013 Deposition" are reasonable due to the "novel procedure" instituted by the court which required additional work and attorney involvement. Pet'r's Reply, filed Aug. 21, 2015. Ms. Pernal also filed a supplemental motion for attorneys' fees and costs for the attorneys' fees incurred replying to the Secretary's objections to her initial fee motion. Pet'r's Supp'l Mot., filed Aug. 21, 2015.

The Secretary filed a response to Ms. Pernal's reply maintaining her previous objections but not objecting to Ms. Pernal's request for additional fees related to the litigation of the fee issue. Resp't's Resp., filed Sept. 1, 2015. Ms. Pernal filed a sur-reply on September 8, 2015, maintaining her position. In light of the decision in <u>McCulloch v. Sec'y of Health & Human Servs.</u>, the undersigned ordered both parties to complete a chart regarding hourly rates and hours for attorneys and associated staff. No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); Order, filed Oct. 22, 2015. Both parties submitted a

4

completed chart. Ms. Pernal filed an amended motion for attorneys' fees and costs through November 4, 2015 and adjusted for the McCulloch rates. She requests $84,711.70 in attorneys' fees and $38,928.41 in costs for a total of $123,990.11. Pet'r's Am. Mot., filed Nov. 9, 2015. The Secretary filed no further objections.

## DISCUSSION

### I. Entitlement to Fees and Costs Under the Vaccine Act

Under the Vaccine Act, a special master or a judge of the United States Court of Federal Claims shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). Ms. Pernal was awarded compensation, and therefore Ms. Pernal is entitled to an award of reasonable attorneys' fees and costs in this case.

### II. Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act, which involves a two-step process. Avera, 515 F.3d at 1348. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee

application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

The present case is another example of recent litigation involving the law firm representing this petitioner, Conway, Homer, & Chin-Caplan, P.C. ("CHCC"), and the government. In short, the parties did not agree to a reasonable hourly rate for the attorneys representing petitioners in the Vaccine Program and the dispute led to litigation. For a more complete recitation of events, see McCulloch, and Avchen v. Sec'y of Health & Human Servs., No. 14-279V (Fed. Cl. Spec. Mstr. Dec. 4, 2015).

Ms. Pernal presently requests an award of $84,711.70 in attorneys' fees, $38,928.41 in attorneys' costs, and $350 in costs that she personally incurred. The Secretary's remaining objections concern the amount of time the attorneys spent and costs.

### A. Reasonable Hourly Rate

An appropriate hourly rate for the attorneys, paralegals, and law clerks at CHCC was found in McCulloch, 2015 WL 5634323. The McCulloch analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC is sound, and, therefore, is adopted in this case.

### B. Reasonable Number of Attorney Hours

With three exceptions, the Secretary did not object to the time Ms. Pernal's attorney charged. For example, the Secretary did not challenge any activities relating to the extended argument over whether the expert's report could or should constitute direct testimony. The time spent is reasonable.

First, the Secretary objects to the work performed by multiple attorneys. Resp't's Opp'n at 19. The Secretary's objection that work performed by multiple attorneys duplicated the work the primary attorney, Mr. Joseph Pepper, performed is well founded. This results in a deduction of **$2,695.70**.

Second, the Secretary objects to 20 hours billed in association with the attorney's meeting with Dr. Gupta on December 10, 2013. The attorney's timesheets refer to this meeting as a "deposition" or a "case meeting." Pet'r's Appl'n at pdf 34, 36. The Secretary argues that this was a deposition for which no

6

notice was given and that conducting a deposition was excessive. Resp't's Opp'n at 21.

Although a court reporter was present during the interview, the exchange between Mr. Pepper and Dr. Gupta does not constitute a deposition pursuant to Rule 30(b) of the Federal Rules of Civil Procedure. Regardless of how the December 10, 2013 meeting is categorized, the essential question is whether Mr. Pepper spent a reasonable amount of time (20 hours) preparing for and participating in it. Mr. Pepper had already spent more than 40 hours contributing to Dr. Gupta's first report in which Dr. Gupta was expected to answer questions contained in the instructions. Dr. Gupta was obligated to produce a second report only because he did not respond to all the questions in the first report. Under these circumstances, 20 hours is excessive.

The undersigned finds 12 hours reasonably allows for preparation of a supplemental report that conforms to the new procedure for expert witnesses. The time of 12 hours allows for one standard work day (eight hours) of preparation and a half day (four hours) of meeting. Therefore, eight hours, valued at of **$1,704**, is deducted.

Third, the Secretary objects to the 4.8 hours spent preparing a demand letter. Resp't's Opp'n at 21. Approximately, two and a half years after Ms. Pernal's attorney filed her petition, the attorney prepared an amended one on April 18, 2013. Around the same time, the attorney submitted a demand for settlement. See Pet'r's Status Rep., filed Apr. 18, 2015. The Secretary contends that the demand letter reproduces the amended petition, which took Ms. Pernal's attorney more than 20 hours to prepare. Resp't's Opp'n at 21. Although factual recitations in the amended petition and demand letter may overlap, the demand almost certainly includes other information. The demand likely includes assertions that monetarize Ms. Pernal's injuries and compensation. Thus, the additional time spent preparing a demand is reasonable.

### C. Costs

Ms. Pernal requests costs totaling $38,928.41. The Secretary objects to the costs expended on three grounds.

The Secretary's first objection to the cost of a court reporter used during the December 10, 2013 expert interview is well founded. Ms. Pernal argued that the "deposition" was needed to ensure a comprehensive report in light of expert

reports constituting direct testimony and to have the transcript available for attorney consultation throughout the pendency of the case. Pet'r's Reply at 58. However, nothing in the orders regarding the procedure for expert reports contemplates the hiring of a court reporter. In the undersigned's experience, although attorneys often meet with experts before they testify, court reports are not present at these sessions.

Moreover, the creation of a transcript is inconsistent with the idea that the expert's report would constitute the direct testimony. The new procedure attempted to ensure that the expert's opinions are disclosed in a report available to all case participants. It hardly makes sense for a transcript to contain information that was not contained in the report. Finally, the presence of a court report is extraneous. An attorney could have taken notes during the meeting. Phones have recording capabilities and could have been used to record the meeting and the recording sent to a service for transcription if necessary. This results in a deduction of **$860.45**.

The Secretary's remaining two objections concern the costs Dr. Gupta billed for his services – specifically Dr. Gupta's rate and number of hours. Dr. Gupta prepared four expert reports during the course of the litigation billing a total of 62 hours. Exhibits 23, 25, 26, 31; Petr's Appl'n, Tab B at 15-17, 19-21, 23. He has charged $500.00 per hour.

In the Secretary's opposition, she noted that the petitioner did not submit any evidence to support Dr. Gupta's proposed hourly rate. Resp't's Opp'n at 22. She also represented that Dr. Gupta had not previously worked as an expert in the Vaccine Program and that his inexperience may have contributed to inefficiencies.

On the issue of Dr. Gupta's hourly rate, the petitioner's reply was not effective. The petitioner reviewed information about Dr. Gupta's background, which is found on his curriculum vitae. However, the petitioner did not provide any basis for understanding how his credentials translate into a reasonable hourly rate. The petitioner did not file even an affidavit from Dr. Gupta attesting that $500 is his normal hourly rate. Overall, this omission left a gap in the petitioner's motion for attorneys' fees that the petitioner should have filled.[3]

---

[3] Petitioner cited three cases in which Dr. Gupta was allegedly reimbursed at a rate of $500 per hour. However, the decisions do not confirm the petitioner's representation and, therefore, do not advance the petitioner's argument. While the Secretary might be faulted for a

(. . . continued)

The undersigned has attempted to determine a reasonable hourly rate based upon his experience. The undersigned has located cases in which a rheumatologist was compensated at $400 per hour for work performed in 2007. Dougherty v. Sec'y of Health & Human Servs., No. 05-700V, 2011 WL 5357816, at *20 (Fed. Cl. Spec. Mstr. Oct. 14, 2011). In another case, an expert in pediatric rheumatology, which is a relatively rare specialty, was compensated at a rate of $350 per hour. Although the years when the work was performed are not specified, the years are most likely 2007 and 2008, which were within two years of the decision on entitlement. Gruber v. Sec'y of Health & Human Servs., No. 00-749V, 2009 WL 2135739, at *12 (Fed. Cl. Spec. Mstr. June 24, 2009), mot. for rev. granted in part and denied in part, 91 Fed. Cl. 773 (2010).

The undersigned consulted the consumer price index, found on the web site for the Bureau of Labor Statistics. The Dougherty rate is the equivalent of approximately $450 per hour in 2013. The Gruber rate is the equivalent of almost $400 per hour in 2013. Neither adjusted rate supports the $500 requested here.

Based upon Dougherty, Gruber, and the undersigned's experience, the undersigned finds that $400 is a reasonable hourly rate for Dr. Gupta's work. This rate takes into account Dr. Gupta's relative inexperience in working in the Vaccine Program. (As discussed below, Dr. Gupta is being compensated for almost all of the number of hours requested.) If Dr. Gupta gains additional experience and works more efficiently, then an increase in his hourly rate would be appropriate. Alternatively, a petitioner in some future case might submit evidence that justifies an increase in Dr. Gupta's hourly rate.

With respect to the number of hours, the Secretary focuses on two discrete periods. The Secretary contends that the 26 hours billed on May 13 and June 3, 2014 to review the respondent's expert report and articles were excessive. Resp't's Opp'n at 11. The Secretary's argument is well-founded. For example, Dr. Gupta billed more hours to complete a responsive report (exhibit 26) than to complete his initial expert report and case review (exhibit 23). Accounting for Dr. Gupta's expertise, familiarity with the case, and familiarity with the articles, the undersigned finds a reasonable number of hours for the responsive report is 20 hours resulting in a deduction of six hours.

---

lack of consistency with respect to Dr. Gupta's requested hourly rate, the Secretary did object in this case. After the Secretary raised the objection, it was the petitioner's obligation to respond to the objection with evidence in this case.

The Secretary also contends that the number of hours billed on October 23, 2014 for "reviewing the letter by Dr. Oddis and Mr. Pepper's outline for response" is excessive because this was "simply review" and Dr. Gupta did not respond to Dr. Oddis's report (exhibit K). Resp't's Opp'n at 23. The Secretary's argument is misplaced as this review by Dr. Gupta produced his third supplemental report filed October 24, 2014. See exhibit 31.

In sum, Ms. Pernal has requested compensation for Dr. Gupta at a rate of $500 per hour for 70 hours. A reasonable amount of compensation is $400 per hour for 64 hours. The difference is **$9,400**.

### III. Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards Ms. Pernal the following amount for attorneys' fees and costs:

Summary

| | |
|---|---|
| Requested Attorneys' Fees: | $84,711.70 |
| (Am. Appl'n filed Nov. 9, 2015) | |
| Deductions: | $4,399.70 |
| Attorneys' Fees Awarded: | **$80,312.00** |
| | |
| Requested Attorneys' Costs: | $38,928.41 |
| Deductions: | $10,260.45 |
| Attorneys' Costs Awarded: | **$28,667.96** |
| | |
| Requested Petitioner's Costs: | $350.00 |
| Deductions: | $0.00 |
| Petitioner's Costs Awarded: | **$350.00** |
| | |
| Attorneys' Fees & Costs Awarded: | **$108,979.96** |
| Petitioner's Costs Awarded: | **$350.00** |
| Total Attorneys' Fees & Costs Awarded: | **$109,329.96** |

**Accordingly, the court awards:**

   a. **$108,979.96** representing attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e). The award shall be in the form of a check made

    payable jointly to petitioner and petitioner's attorney, Ronald C. Homer, of Conway, Homer & Chin-Caplan, in the amount of **$108,979.96**; and

b. **$350.00**, representing Ms. Pernal's costs. The award shall be in the form of a check made payable to Ms. Pernal for **$350.00**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

    **IT IS SO ORDERED.**

                                    s/Christian J. Moran
                                    Christian J. Moran
                                    Special Master